# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| SCOTT FREEMAN, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO.: 2:10-CV-89-PRC |
| ) | |
| PORTER COUNTY SHERIFF'S ) | |
| DEPARTMENT; DAVID LAIN, Porter County ) | |
| Sheriff; JOHN J. WIDUP, Warden of the Porter ) | |
| County Jail; and CORP. SANDAGE, Whose True ) | |
| Christian Name is Unknown, ) | |
|     Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 34], filed by Defendants Porter County Sheriff's Department, David Lain in his individual capacity, John J. Widup in his individual capacity, and Corporal Sandage in her official capacity on July 8, 2011. For the following reasons, the Court grants Defendants' Motion for Summary Judgment on all remaining counts of Plaintiff's Complaint.

**PROCEDURAL BACKGROUND**

On January 27, 2010, Plaintiff Scott Freeman filed a Complaint against Defendants Porter County, Indiana, Porter County Sheriff's Department, David Lain as Porter County Sheriff, John J. Widup as the Warden of the Porter County Jail, and Corporal Sandage in Porter Superior Court, in Valparaiso, Indiana. Therein, Plaintiff alleges that, on February 13, 2008, during his incarceration at the Porter County Jail, he was ordered by a jail officer to stand on the top bunk in a cell to clean a light fixture, that he lost his balance and fell, that he required medical treatment, and that he suffered a severe and permanent injury. In Count I, Plaintiff alleges that Defendants failed to provide him with adequate medical treatment and were negligent and deliberately and callously

indifferent to his injuries. In Count II, Plaintiff alleges that Defendants were negligent, thus exacerbating his medical injury, pain, suffering, and mental anguish. Finally, in Count III, Plaintiff alleges that Defendants failed to provide adequate training to the Porter County Jail staff and medical personnel. Defendants filed a Notice of Removal to this Court on February 22, 2010.

On March 19, 2010, Defendants filed a Motion to Partially Dismiss Plaintiff's Complaint, seeking dismissal of (1) all claims against Defendant Porter County, Indiana, (2) the claims against Defendants David Lain and John Widup in their official capacities, and (3) the claims against Defendants David Lain and John Widup in their individual capacities. Defendants also filed an Answer that date. Plaintiff did not file a response to the Motion to Dismiss. However, the parties filed a Stipulation to Dismiss on June 4, 2010, agreeing that the claims against Defendants David Lain and John J. Widup in their official capacities should be dismissed with prejudice and that the claims against Lain and Widup in their individual capacities be dismissed pending developments in discovery. The stipulation did not address the dismissal of Defendant Porter County, Indiana. On June 30, 2010, the Court issued an Opinion and Order denying the motion contained within the Stipulation to Dismiss but granting in part and denying in part the Motion of Defendants to Partially Dismiss Plaintiff's Complaint. The Court dismissed Plaintiff's Complaint against Defendant Porter County, Indiana, and dismissed Plaintiff's claims against Defendants David Lain and John Widup in their official capacities. Plaintiff's claims against Defendants David Lain and John J. Widup in their individual capacities, Porter County Sheriff's Department, and Corporal Sandage remain pending.

Plaintiff's attorney filed a Motion to Withdraw Appearance on February 10, 2011, and the Court issued an Order granting the motion the following day. Plaintiff is now proceeding pro se.

Defendants filed the instant Motion for Summary Judgment and memorandum in support on July 8, 2011. Defendants also filed a Notice of Summary Judgment Motion on July 14, 2011, serving the notice on the pro se Plaintiff and advising Plaintiff of his obligations in responding to the summary judgment motion. Plaintiff has not filed a response to the Motion for Summary Judgment, and the time to do so has passed. On August 19, 2011, Defendants filed a Reply in Support of Their Motion for Summary Judgment, asking for a summary ruling pursuant to Local Rule 7.1(a) and reasserting the merits of their Motion for Summary Judgment.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting

materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**MATERIAL FACTS**

Plaintiff was arrested in Pulaski County, Indiana, on December 8, 2007, and it was determined that Porter County, Indiana, had an active arrest warrant for Plaintiff for failing to appear in court. On December 12, 2007, Plaintiff was transferred to the Porter County Jail.

*1. Injury and Medical Treatment at Porter County Jail in February 2008*

On February 13, 2008, Plaintiff fell and hit the right side of his forehead. Nurse Cheryl Clasko examined Plaintiff on the day of his injury and found him to be alert, oriented, and able to speak. At the time of the examination, Plaintiff told Nurse Casko that he slipped and fell. Nurse Casko placed Plaintiff in medical isolation, so that the medical staff members on duty were able to

5

monitor his condition. After her examination of Plaintiff, Nurse Casko contacted Dr. Al-Shami, a Porter County Jail doctor at the time, who instructed her to give Plaintiff Tylenol and an ice pack and to monitor him for twenty-four hours. Nurse Casko gave Plaintiff the Tylenol and the ice pack, and Plaintiff remained in medical isolation for monitoring. At that time, Nurse Casko completed a medical progress note regarding her examination of Plaintiff.

On February 18, 2008, Plaintiff complained that his head hurt to Anabelle Perez, a member of the Porter County Jail medical staff, during the distribution of medication. Upon examination, Perez noticed a lump on Plaintiff's forehead. Perez provided Plaintiff with an ice pack, informed the medical staff to monitor Plaintiff, placed Plaintiff on Dr. Al-Shami's waiting list, and personally called Dr. Al-Shami, who instructed Perez to give Plaintiff Tylenol on an as-needed basis for up to three days. Perez further completed a medical progress note regarding her examination of Plaintiff.

On February 20, 2008, Plaintiff was released to the Pulaski County Sheriff's Department pursuant to a Pulaski Superior Court transport order and returned to the Porter County Jail on February 21, 2008, at 10:17 p.m. Dr. Al-Shami's visit to Porter County Jail on February 21, 2008, occurred during Plaintiff's absence from the jail. Plaintiff was released from the custody of the Porter County Sheriff's Department on February 25, 2008.

*2. April 19, 2008 arrest and subsequent incarceration*

On April 19, 2008, Plaintiff was arrested in Valparaiso, Indiana, placed in the custody of the Porter County Sheriff's Department, and incarcerated at the Porter County Jail until his release from custody on February 2, 2009.

During his medical screening at intake on April 19, 2008, Plaintiff reported that he had a back injury and had been seeing a doctor for a slipped disk in his back.

On May 17, 2008, Plaintiff requested an appointment with a doctor because of a bump on his head, as well as headaches, dizziness, and back pain. Dr. Al-Shami examined Plaintiff on May 19, 2008, and Plaintiff complained of a head injury from February 2008, as well as pain in his right shoulder. Dr. Al-Shami prescribed ibuprofen for ten days and instructed Plaintiff to sleep on the bottom bunk. On May 20, 2008, Plaintiff was assigned to a bottom bunk. From May 20, 2008, to May 29, 2008, Plaintiff received the prescribed ibuprofen.

Thereafter, from September 2008 to January 2009, Plaintiff went to Porter Memorial Hospital on four separate occasions for treatment for his head injury, lower back pain, and right knee pain. First, on September 19, 2008, Plaintiff went to Porter Memorial Hospital for x-rays of his right knee and lower back. He also had an MRI of his lumbar spine, an EEG, and a CT scan of the brain. On November 6, 2008, Plaintiff went to Porter Memorial Hospital for an EMG test. On December 2, 2008, Plaintiff saw Dr. John M. Diveris, an orthopedic surgeon, for his right knee pain, and Dr. Diveris recommended that he have an MRI of his right knee. On January 15, 2009, Plaintiff went to Porter Memorial Hospital for an MRI of his right knee. Plaintiff was released from the Porter County Jail on February 2, 2009.

*3. Training at Porter County Jail*

When corrections officers are first hired at the Porter County Jail, they receive six weeks of initial training that covers a broad range of policies, procedures, and practices. The training includes three weeks of classroom time and three weeks with a field training officer in the jail, during which the corrections officers train with the Medical Department for at least one day. During the probationary period, the corrections officers have exposure to all sections of the jail, including

7

medical isolation. Each new jail officer gets a copy of the Rules and Regulations for the jail. Further, the jail holds training sessions once every month for all corrections officers.

The medical staff receives training through the Medical Director when they are hired at the Porter County Jail.

*4. Contact with Defendants*

In his Complaint, Plaintiff alleges that, on February 13, 2008, he was "ordered by an officer and employee of the Porter County Sheriff's Department to stand on the top bunk in a cell to clean a light fixture." Compl., p. 1, ¶ 2. However, Nurse Casko states in her Affidavit that Plaintiff never told her that Corporal Sandage had ordered him to clean a light fixture in his cell. She further states that if Plaintiff had told her that Corporal Sandage or any other employee of the jail had told him to get on the top bunk and clean a light fixture in his cell, she would have recorded the information in her medical progress notes.

Defendant Sandage was working in intake from February 13 until February 15, 2008, and therefore had no contact with Plaintiff during those dates.

Defendants Widup and Lain neither ordered Plaintiff to climb his bunk and clean a light fixture, nor did they have knowledge of anyone else instructing him to do so. Moreover, neither Widup nor Lain had any involvement with Plaintiff's medical treatment at the Porter County Jail or had any contact at all with Plaintiff while he was incarcerated at the Porter County Jail. Both relied on the medical staff at the Porter County Jail to assess the needs of the inmates and to prescribe treatment.

There is no evidence in the record that Defendants Widup, Lain, and Sandage had any contact with Plaintiff during either of the two periods of incarceration with the Porter County Jail.

8

**ANALYSIS**

**A. § 1983 Claim for Deliberate Indifference to Serious Medical Needs**

In his Complaint, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs while he was incarcerated, in violation of his Eighth Amendment rights. The Supreme Court has interpreted the Eighth Amendment to require the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).[1] However, prisoners are not entitled to "unqualified access to health care," but rather only must receive "adequate medical care." *Johnson*, 433 F.3d at 1013 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Hernandez v. Keane*, 341 F.3d 137, 148 (2d. Cir. 2003); *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002)). To establish a claim for a violation of this Eighth Amendment right, a plaintiff must prove two elements: (1) whether the injury is objectively "sufficiently serious," and (2) subjectively, whether the prison official had the "requisite culpable state of mind," that is that his state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

Regarding the first element, a medical condition is serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*,

---

[1] Although it is unclear from the record before the Court whether Plaintiff was a pre-trial detainee or a convicted inmate at the time of his injury and subsequent medical treatment, the difference for purposes of the instant motion is immaterial. While the Eighth Amendment does not apply to a pre-trial detainee, a claim for deliberate indifference to medical care by a pre-trial detainee is considered under the due process clause of the Fourteenth Amendment, which affords the same protection against deliberate indifference as the Eighth Amendment for convicted inmates. *See Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) (citing *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 n.1 (7th Cir. 2009)).

414 F.3d 645, 653 (7th Cir. 2005)). In order to satisfy the second element of the *Farmer* test, the Plaintiff must establish recklessness in the criminal sense. *Id*. A showing of negligence or even gross negligence is not enough to meet this burden. *Id*. Additionally, a non-medical prison official cannot be held "deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson*, 433 F.3d at 1012 (alteration in original).

In this case, the record indicates that Plaintiff's injuries consisted of a bump on his forehead, headaches, dizziness, back pain, and shoulder pain. The Court need not address whether these injuries are objectively serious under the first prong of the analysis because Plaintiff has failed to show that Defendants Lain, Widup, or Sandage acted with deliberate indifference to Plaintiff's medical needs. Nothing in the record indicates that Defendants Lain, Widup, or Sandage had any contact whatsoever with Plaintiff. The record does not show that any of the named Defendants were even aware of Plaintiff's injuries or his interactions with the medical staff.

Not only has Plaintiff failed to produce any evidence that Defendants Lain, Widup, or Sandage were deliberately indifferent to his medical needs, he has failed to show that the medical care he received was anything but adequate. The record shows that the Porter County Jail medical staff treated Plaintiff adequately and continuously after his initial injury. Plaintiff was treated by Nurse Clasko on February 13, 2008, the same day as his injury. Plaintiff was placed in medical isolation for close observation and also received an ice pack and Tylenol. On February 18, 2008, Plaintiff complained of headaches and was immediately examined by Nurse Perez. Nurse Perez informed Dr. Al-Shami of Plaintiff's condition, put Plaintiff on the doctor's waiting list, gave Plaintiff another ice pack and Tylenol, and continued monitoring Plaintiff's condition.

On February 21, 2008, Dr. Al-Shami visited the Porter County Jail; however, Plaintiff was in the custody of the Pulaski County Sheriff's Department at that time and, thus, was not seen by Dr. Al-Shami. The fact that Plaintiff was not seen by Dr. Al-Shami does not rise to the level of deliberate indifference because Defendants did not purposefully make Plaintiff unavailable. "An inmate who explains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). There is no evidence that Plaintiff's condition warranted emergency medical care of any verifying medical evidence to establish a detrimental effect of any delay in medical treatment. When examining an inmate's medical treatment during incarceration, courts must consider their treatment as a whole. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). In *Gutierrez*, the court held that a six-day delay in seeing a doctor regarding a possibly infected cyst was not unreasonably long, especially in light of the medical staff's overall attentiveness. *Id*. at 1374. Taken as a whole, the record in this case indicates that Plaintiff received prompt, continuous, and adequate care during this first period of incarceration.

Similarly, when Plaintiff returned to the Porter County Jail in April 2008, he was again provided with continuous medical treatment for his alleged injuries. On May 17, 2008, Plaintiff complained that he had dizziness and headaches and requested to see a doctor; within approximately forty-eight hours, he was seen by Dr. Al-Shami. Additionally, Plaintiff went to Porter Memorial Hospital on numerous occasions for further treatment, and he saw an outside specialist for his knee. Based on the totality of care, the record demonstrates that Defendants provided comprehensive medical treatment. Plaintiff, who has not responded to this motion for summary judgment, has

offered no evidence to raise any genuine issue of material fact as to the quality of the medical treatment afforded him. As there is no evidence of a constitutional deprivation or any evidence that Defendants were deliberately indifferent to Plaintiff's alleged serious medical needs, Defendants are entitled to summary judgment.

To the extent Plaintiff's Complaint alleges claims against Lain, Widup, and Sandage in their individual capacities, the Court need not reach the issue of qualified immunity because there is no underlying constitutional deprivation. *See Woodruff v. Mason*, 542 F.3d 545, 559 n. 17 (7th Cir. 2008) (citing *Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003)).

Regarding Plaintiff's claim in Count III of his Complaint that Defendant Porter County Jail failed in its duty to adequately train its officers and staff, the Court finds that summary judgment in favor of Defendant Porter County Jail is appropriate on Plaintiff's *Monell* claims. The United States Supreme Court has held that a municipality may be held liable under § 1983 for constitutional violations arising from a failure to train. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To establish a § 1983 claim for liability against the Porter County Sheriff's Department, Plaintiff must show that (1) a deprivation of a federal right (2) resulted from an express municipal policy, a widespread custom, or the actions of an official with final policy-making authority that (3) proximately caused the injury suffered. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978). As set forth above, Plaintiff in this case has failed to raise any genuine issue of material fact that he suffered a constitutional deprivation. Because there is no underlying constitutional deprivation, the Court need not reach the *Monell* issues related to the liability of Defendant Porter County Sheriff's Department for the alleged constitutional violation. *See City of*

*Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010).[2]

### B. State Law Claims

When a district court has dismissed all of a plaintiff's federal claims, it has broad discretion to refuse to exercise jurisdiction over remaining supplemental state claims. *Szumny v. Am. Gen. Fin. Inc.*, 246 F.3d 1065, 1073 (7th Cir. 2001); *Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). Under those circumstances, the district court should ordinarily relinquish jurisdiction over the supplemental state law claims rather than resolve them on the merits. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001). However, jurisdiction over supplemental claims should be retained even though the federal claims have been dismissed: (1) where the statute of limitations would bar the refiling of the supplemental claims in state court; (2) where substantial judicial resources have already been expended on the supplemental claims; or (3) where the outcome of the state claims is obvious. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)).

---

[2] Although Defendants cite *Heller*, this is not a case in which individual officers are found at trial not to be personally liable but the municipality is nevertheless found liable for the constitutional violation or a case in which there is the possibility that the individual may not be liable but the municipality may be. *See Heller*, 475 U.S. at 799; *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 302-07 (7th Cir. 2010) (discussing, in the context of a jury verdict in favor of individual officers, the scope of the United States Supreme Court ruling in *Heller*, and finding that *Heller* does not stand for a broad rule that requires individual officer liability before a municipality can be held liable for damages but rather stands for a narrower rule that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict"); *Tanner v. City of Waukegan*, No. 10 C 1645, 2011 WL 686867, at *3-4 (N.D. Ill. Feb. 6, 2011) (discussing, in the context of bifurcation, the holdings in *Heller* and *Thomas* and acknowledging that individual defendants could assert an immunity defense to a claim of inadequate medical care that may still leave the municipality liable); *Evans v. City of Chi.*, No. 10 C 542, 2010 WL 3075651, at *4 (N.D. Ill. Aug. 5, 2010); *Hunt ex rel Chiovari. v. Dart*, 754 F. Supp. 2d 962, 974-75 (N.D. Ill. 2010) (recognizing *Heller*'s holding that, for a *Monell* claim to succeed, an individual must have suffered a constitutional injury and recognizing the holding in *Thomas*).

In this case, Plaintiff's state law claim is that Defendants' failure to adequately treat his injuries constituted negligence, which resulted in the aggravation of his medical injury, pain, suffering, and mental anguish. Because the outcome of the state law claim against the individual Defendants Lain, Widup, and Sandage is clear, the Court finds that retaining jurisdiction to decide those claims is proper. The Indiana Tort Claims Act provides immunity to governmental employees acting within the scope of their employment. *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). Indiana Code § 34-13-3-5(b) provides that "[a] lawsuit alleging that an employee acted within the course of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). "In general, a plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his employment." *Miner v. SW Sch. Corp.*, 755 N.W.2d 1110, 1114-15 (Ind. Ct. App. 2001). If discovery establishes that the employee was acting within the scope of his employment, he is entitled to summary judgment irrespective of whether his conduct was reckless or willful and wanton. *Bushong*, 790 N.E.2d at 472.

In this case, the discovery materials presented to the Court and set forth above conclusively demonstrate that Sheriff Lain, Warden Widup, and Corporal Sandage had no contact with Plaintiff at any of the relevant times. However, even if Lain, Widup, and Sandage had committed any acts whatsoever, they would have done so within the course of their employment. The evidence is undisputed that any conduct at issue on the part of these individually named Defendants was undertaken while discharging duties for the Porter County Sheriff's Department at the Porter County Jail, and, thus, the individuals would have been acting within the scope of their employment as a matter of law. Therefore, the governmental entity itself, the Porter County Sheriff's Department,

is the only appropriate defendant, and the Court grants summary judgment in favor of the individual Defendants on the Indiana state law claims.

As for the Porter County Sheriff's Department, the Court also retains jurisdiction to decide the state law claim. There is no evidence that the Sheriff's Department failed to exercise reasonable care to preserve Plaintiff's health. Under a theory of negligence, a plaintiff must establish: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach." *Trout v. Buie*, 653 N.E.2d 1002, 1008 (Ind. Ct. App. 1995) (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (1991)). Under Indiana law, "summary judgment is generally seen to be inappropriate in negligence actions." *Perkins v. Lawson*, 312 F.3d 872, 876 (7th Cir. 2002) (citing *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151 (Ind. App. 1992)) (remanding pendant state law negligence claims related to medical care in jail because the court could not find, as a matter of law, that there was no negligence in that case). Nevertheless, if the facts of the case are undisputed, summary judgment is appropriate on the issue of breach of duty when the facts "lead only to a single inference or conclusion." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).

In this case, the facts are undisputed. The record shows that Plaintiff had constant interaction with the medical staff at Porter County Jail, he was routinely administered medication, and he was taken to the hospital on several occasions. The evidence of record shows that Plaintiff was provided with adequate medical care, and Plaintiff has offered no evidence that the medical staff at Porter County Jail misdiagnosed his condition, that the treatment he received was inadequate in light of his medical needs, that there was a detrimental effect of delay in providing medical treatment, or that

the Jail had a history of providing inadequate medical care to inmates. Thus, Plaintiff has offered no evidence that the Sheriff's Department violated any standard of care. Because the undisputed evidence of record regarding the negligence claim against the Porter County Sheriff's Department makes the outcome obvious, the Court finds that retaining jurisdiction to decide this claim is also proper. The Court grants summary judgment in favor of the Porter County Sheriff's Department on Plaintiff's state law negligence claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [DE 34]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants Porter County Sheriff's Department and Defendants David Lain, John J. Widup, and Corp. Sandage in their individual capacities and against Plaintiff.

SO ORDERED this 7th day of November, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc: All counsel of record